UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| Conservation Law Foundation, Inc. | ) ) ) | Case No. 1:17-CV-11033-LTS |
| Plaintiff, | ) |  |
| v. | ) ) | **Consent Decree** |
| J. Melone & Sons, Inc. | ) ) |  |
| Defendant | ) ) |  |

WHEREAS, Plaintiff Conservation Law Foundation, Inc. ("CLF") filed this action on June 5, 2017, against J. Melone & Sons, Inc. ("J. Melone" or "Defendant"), alleging violations of the Clean Water Act, 33 U.S.C. §§ 1251 *et seq*., and seeking declaratory and injunctive relief, civil penalties, and attorneys' fees and costs;

WHEREAS, J. Melone owns and operates a ready mixed concrete and construction sand and gravel site at 77 White Pond Road., Stow, MA 01775 (the "Facility");

WHEREAS, J. Melone has implemented an Administrative Consent Order issued by the Massachusetts Department of Environmental Protection remediating hazardous materials emanating from a leaking underground storage tank that impacted groundwater and migrated over time at the Facility;

WHEREAS, CLF has alleged that the Facility discharges stormwater and process wastewater to the Assabet Brook, a water of the United States within the Concord watershed;

WHEREAS, J. Melone has agreed to engage a qualified engineering consultant to undertake the preparations necessary to apply for a stormwater discharge permit for, and eliminate any unpermitted process wastewater discharges from, the Facility; and

WHEREAS, CLF and J. Melone (collectively, "the Parties" or individually "Party") agree that resolution of this matter without further litigation is in the best interest of the Parties and the public, and that entry of this Decree is the most appropriate means of resolving this action.

NOW, THEREFORE, without the trial of any issue of fact or law, without the admission by J. Melone of any of the facts or violations alleged in the Complaint, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

1

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

## I. JURISDICTION AND VENUE

1. Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction). An actual, justiciable controversy exists between Plaintiff and Defendant. The requested relief is proper under 28 U.S.C. § 2201, 28 U.S.C. § 2202 and 33 U.S.C. § 1365(a).

2. Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), because the alleged events giving rise to this action occurred at the Facility, located at 77 White Pond Road, Stow, MA 01775 and in the Concord watershed, which are located within this judicial district.

## II. COMPLIANCE PROGRAM

3. Defendant shall not cause or allow process wastewater to discharge from the Facility, unless consistent with state and federal statutory and regulatory requirements and discharge permits.

4. Defendant shall obtain and maintain coverage under the United States Environmental Protection Agency ("EPA") National Pollutant Discharge Elimination System ("NPDES") 2015 Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity ("MSGP") and shall comply with the MSGP at the Facility. The MSGP, as it may be updated from time to time, is incorporated into this Consent Decree by reference.

5. Within thirty (30) days after the date on which this Consent Decree is entered by the Court (the "Effective Date"), Defendant shall develop a stormwater pollution prevention plan ("SWPPP") in accordance with Parts 5 and 8.E of the MSGP. Defendant shall implement the provisions of its SWPP at the Facility. Development of the SWPPP shall include, at minimum, the following steps:

   a) formation of a pollution prevention team of qualified personnel who will be responsible for ensuring compliance with the MSGP;

   b) identification of potential stormwater pollution sources at the Facility, and selection and installation of appropriate control measures that minimize the discharge of pollutants during storm events for each of these sources; and

   c) development of procedures for conducting required inspection and monitoring activities, as well as regular maintenance of control measures, at the Facility.

6. Defendant has retained a qualified engineering consultant to develop its SWPPP. Defendant shall incorporate the consultant's recommendations in its SWPPP.

2

7. Defendant shall provide a copy of its final SWPPP to CLF.

## III. MONITORING PROGRAM

8. Defendant shall comply with all inspection, monitoring, and reporting requirements of the MSGP.

9. Defendant shall monitor and sample its stormwater runoff pursuant to the MSGP for pollutants identified in the MSGP for Sectors E (SIC code 3273) and J (SIC code 1442) commencing the first monitoring quarter after discharge authorization, pursuant to Section 6.1.7 of the MSGP. This monitoring must be performed pursuant to the requirements of the MSGP. Once Defendant has obtained coverage under the MSGP in the future as set forth in Paragraph 4 of this Decree, Defendant shall commence submitting quarterly tests to EPA.

10. Defendant may take additional samples of its stormwater discharges. If it does so, Defendant will send a copy of each such inspection and/or sampling result to CLF no later than ten (10) days after receipt.

11. During the first year after the Effective Date of this Decree, Defendant shall implement control measures, if any, and/or maintain control measures at the Facility as necessary to meet the benchmark levels for MSGP Sectors E (Total Suspended Solids and Iron) and J (Nitrate plus Nitrite Nitrogen and Total Suspended Solids). If, after the end of twelve months from the Effective Date of this Decree, Defendant's quarterly monitoring result for any parameter exceeds Defendant's 2015 MSGP benchmark levels under parts 8.E or 8.J, Defendant agrees to pay stipulated additional Supplemental Environmental Project payments as set forth in Paragraph 16 of this Decree. Such stipulated additional Supplemental Environmental Project payments shall be calculated based on the number of monitoring parameters exceeded during a quarterly monitoring event, not on the number of discharge locations where a monitoring parameter is exceeded (*i.e.*, an exceedance of the TSS monitoring parameter at three separate discharge locations sampled during one quarterly monitoring event shall result in one stipulated additional Supplemental Environmental Project payment, rather than three). Moreover, the stipulated penalties set out in this paragraph and Paragraph 16 shall apply only during the second and third years of the term of this Decree (i.e., during the first two years after the one-year grace period described above in this paragraph) and shall not exceed a total sum of $8,000 over the term of this Decree.

12. During the life of the Decree, CLF, through representatives, may conduct up to two (2) site inspections at the Facility. The site inspections shall occur during normal business hours and upon one week's prior notice to Defendant. During a site inspection, CLF representatives may collect water samples, take photos at the Facility, and otherwise monitor compliance with the MSGP and the Decree. Any samples taken during a CLF site inspection shall be split samples with one of the split samples remaining in the possession of Defendant.

13. During the life of the Decree, Defendant shall copy CLF on all documents related to stormwater quality or Clean Water Act compliance regarding the Facility submitted to the EPA, the Town of Stow, or Mass DEP. Such documents shall be provided to CLF within ten days of being sent to the agencies or town by Defendant or its consultants.

## IV. SUPPLEMENTAL ENVIRONMENTAL PROJECT

14. Within one year of the Effective Date, Defendant shall transfer to the Town of Stow the parcel of land described as follows: One (1) Acre of vacant land more or less to the rear of 63 White Pond Road and adjacent to the Town of Stow Town Forest, and being a portion of the premises owned by J. Melone & Sons, Inc. located at 77 White Pond Road, Stow MA, herein called the "Conserved Land." The transfer of development rights shall have the effect of permanently protecting the Conserved Land by establishing a conservation easement on the Conserved Land that runs with the land in perpetuity.

15. For each missed deadline included in this Decree, excluding missed payment deadlines (discussed in Paragraph 19 below), Defendant shall make an additional SEP payment to OARS (www.oars3rivers.org, located at 23 Bradford Street, Concord, MA 01742, contact: Alison Field-Juma, Executive Director) in the amount of five hundred ($500) for the environmental protection and restoration of, or other environmental benefit to, the Concord Watershed. Payment of each such additional amount shall be due fourteen (14) days following each missed deadline. Defendant shall notify CLF in writing concurrently each time a payment is made and provide a copy of each check. Pursuant to Paragraph 39, below, Defendant shall not be required to make such additional SEP payment for missed deadlines arising from a Force Majeure event.

16. For each exceedance of an MSGP benchmark as described in Paragraph 11 of the Decree, above, Defendant will make an additional SEP payment to OARS in the amount of five hundred dollars ($500) for the environmental protection and restoration of, or other environmental benefit to, the Concord Watershed. Payment of each such additional amount shall be due fourteen (14) days following the time Defendant is required to report each quarterly benchmark exceedance under the rules and requirements of its 2015 MSGP. Provided, however, that additional SEP payments shall be due for any exceedance of an MSGP benchmark only during the second and third years of the five-year term of this Decree and the total additional SEP payments for benchmark exceedances over the term of this Decree shall be capped at $8,000.

17. None of the SEP payments shall be disbursed to CLF.

## V. LIQUIDATED ATTORNEY FEES AND COSTS

18. Within five years of the Effective Date, Defendant shall pay to CLF a total sum of Sixty Thousand Dollars ($60,000) as full and complete satisfaction of CLF's claim for attorneys' fees and costs incurred to date in this matter and for reasonable anticipated costs for compliance monitoring and document review over the term of the Decree. J. Melone shall make five annual payments, each ion the amount of $12,000, to CLF according to the following schedule:
    a. A payment of $12,000 on or before September 30, 2018,
    b. A payment of $12,000 on or before September 30, 2019,
    c. A payment of $12,000 on or before September 30, 2020,
    d. A payment of $12,000 on or before September 30, 2021,

4

   e. A payment of $12,000 on or before September 30, 2022.

  19. In the event that any payment owed by J. Melone under the Decree is not made on or before the due date, J. Melone shall be deemed in default of its payment obligations under this Decree. As a result of such default on its payment obligations, in addition to a continued requirement to make said payment, Defendant shall pay to CLF liquidated attorney fees of Five Hundred Dollars ($500) for every day a payment is late.

## VI. EFFECT OF DECREE

  20. CLF covenants not to sue, releases and discharges J. Melone & Sons, Inc. (and its subsidiaries, officers, directors, shareholders, representatives, assigns, agents, consultants, employees, officers, and attorneys, including those who have held positions in the past) from any and all claims, causes of action, or liability under Section 505 of the Clean Water Act, 33 U.S.C. § 1365, for damages, penalties, fines, injunctive relief, past and future attorney's fees, past and future costs, or any other claim or relief (i) relating to, resulting from or alleging noncompliance with the Clean Water Act at the Facility occurring prior to the date the Court enters this Decree; (ii) for any violations that were alleged, or could have been alleged, in the Complaint; (iii) for the conduct alleged to constitute violations in the CLF letter to Defendant dated September 19, 2016; and (iv) for past violations alleged in any CLF correspondence to Defendant dated prior to the date the Court enters this Decree concerning Defendant's facility and operations. Notwithstanding anything to the contrary contained herein, CLF retains all rights necessary to enforce the terms of this Decree, including by the filing of a lawsuit.

  21. J. Melone & Sons, Inc. covenants not to sue, release and discharge CLF (and its subsidiaries, officers, directors, trustees, representatives, assigns, agents, consultants, employees, officers, and attorneys, including those who have held positions in the past) from any and all claims, liability, demands, penalties, costs, and causes of action of every nature which concern or are connected with CLF's investigation of and actions regarding J. Melone which arose prior to the date the Court enters this Decree. Notwithstanding anything to the contrary contained herein, J. Melone retains all rights under this Decree, including all rights necessary for its enforcement.

  22. Neither this Decree, nor terms thereof, nor performance of the terms thereunder by Defendant shall constitute or be construed as an admission or acknowledgment by Defendant of the factual or legal assertions contained in this Decree or in CLF's Complaint, and Defendant retains the right to controvert in any subsequent proceedings, other than proceedings for the purpose of implementing or enforcing this Decree, the validity of the facts or determinations contained in this Decree or the Complaint. Neither this Decree, nor terms thereof, nor performance of the terms thereunder, shall constitute or be construed as an admission or acknowledgment by Defendant of any liability, or an admission of violation of any law, by Defendant or by its officers, directors, employees, agents, successors, or assigns.

  23. CLF does not, by consent to the Decree, warrant or aver in any manner that Defendant's compliance with this Decree will constitute or result in compliance with federal or state law or regulation. Nothing in this Decree shall be construed to affect or limit in any way the obligation of Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Decree.

5

## VII. REVIEW AND TERM OF DECREE

24. The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Consent Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Consent Decree by the United States Attorney General and the EPA. Therefore, after the signing of this decree by the Parties, the Parties shall jointly inform the Court of the decree, and CLF shall serve copies of this Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5.

25. Upon the expiration of the forty-five-day review period provided by 33 U.S.C. § 1365(c)(3), or upon DOJ's completion of its review process, whichever is sooner, the Parties will jointly move the Court for entry of this Decree. This Decree shall take effect on the date it is entered by this Court and shall terminate upon the following: (1) five years have passed from the Effective Date; and (2) completion of all payment obligations set forth in this Decree. If for any reason the Court should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Decree.

## VIII. MODIFICATION AND ENFORCEMENT OF DECREE

26. This Decree may be modified only upon written consent of the Parties and the approval of the Court.

27. This Court shall retain jurisdiction over this matter and allow this action to be reopened for the purpose of enabling the Parties to this Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Decree. If the Court does not agree to retain jurisdiction over this matter, then this Consent Decree will remain in full force and effect between the Parties, and any Party may institute a new action in the United States District Court for the District of Massachusetts concerning their respective rights and obligations under this Decree.

## IX. MISCELLANEOUS PROVISIONS

28. This Decree shall remain in effect if Defendant relocates the Facility and its activities to a different location.

29. Sections I, IV, V, VII, VIII, and IX of this Decree shall remain in effect if J. Melone, Inc. ceases to be the operator of the Facility, regardless of whether the Facility continues to operate or not.

30. All payments pursuant to this Decree shall be made in form of a check.

31. Entire Agreement. This Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements and understandings, whether oral or written, among the Parties.

32. Notices. Any notice, demand, copies of documents and other communications required to be made under the provisions of this Decree (collectively, "Notices") by any Party

6

hereto shall be effective only if in writing and either (a) emailed, (b) personally served, (c) mailed by United States registered or certified mail, return receipt requested, postage prepaid, or (d) sent by a nationally recognized courier service (i.e., Federal Express) for next-day delivery, to be confirmed in writing by such courier. Notices shall be directed to the Parties at their respective addresses set forth below. Notices given in the foregoing manner shall be deemed given when (a) sent via email, (b) actually received or refused by the party to whom sent if delivered by courier, or (c) if mailed, on the day of actual delivery as shown by the addressee's registered or certified mail receipt or at the expiration of three (3) business days after the date of mailing, whichever first occurs.

Notices for Plaintiff shall be sent to:

Zachary K. Griefen, Esq.
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602
zgriefen@clf.org
cc: acharnov@clf.org

Notices for Defendant shall be sent to:

George F. Hailer
Lawson & Weitzen, LLP
88 Black Falcon Avenue
Boston, Massachusetts 02210
ghailer@lawson-weitzen.com

Each Party shall promptly notify the other Party of any change in the above-listed contact information by using the procedures set forth in this paragraph.

33. **Authorization.** Each person signing this Decree represents and warrants that s/he has been duly authorized to enter into this Decree by the Party on whose behalf it is indicated that the person is signing.

34. **Successors and Assigns.** This Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees and permitted assigns.

35. **Interpretation.** The provisions contained herein shall not be construed in favor of or against any Party because that party or its counsel drafted this Decree, but shall be construed as if all Parties prepared this Decree, and any rules of construction to the contrary are hereby specifically waived. The terms of this Decree were negotiated at arm's length by the Parties hereto.

36. **Headings.** The section and paragraph headings contained in this Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Decree.

37. Counterparts. Facsimile, electronic and scanned signatures shall be deemed to be originals for all purposes. Copies of the original Agreement, whether transmitted by facsimile or other means, shall be effective. This Agreement may be signed in counterparts.

38. Severability. In the event that any of the provisions of this Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

39. Force Majeure. For purposes of this Decree, a "Force Majeure event" is defined as any event arising from causes beyond the control of Defendant, including its contractors and subcontractors, that delays or prevents the timely performance of any obligation under this Decree, except for obligations as provided in Paragraphs 14–19 of this Decree, notwithstanding Defendant's best efforts to avoid the delay. The deadline for the responsibility to perform any action under this Decree may be extended for up to the number of days of nonperformance caused by the Force Majeure event, provided that Defendant complies with the notice requirements of this paragraph. Examples of events which may constitute Force Majeure events include severe weather events, natural disasters, and national, state or regional emergencies. Examples of events that are not Force Majeure events include, but are not limited to, normal inclement weather, unanticipated or increased costs or expenses of work, Defendant's financial difficulty in performing such work and acts or omissions attributable to Defendant's contractors or representatives.

If any event occurs which may delay or prevent the performance of any obligation under this Decree, caused by a Force Majeure event, Defendant shall notify CLF, at the address specified in Paragraph 32 above, within fourteen (14) business days after Defendant first knows, or should know, that the event might cause a delay. This written notice to CLF shall include, without limitation: (i) an explanation of the causes of any actual or expected delay or noncompliance; (ii) the anticipated duration of delay; (iii) the measures taken and to be taken by Defendant to prevent or minimize the delay or nonperformance; (iv) a proposed schedule for the implementation of such measures; and (v) a statement as to whether in the opinion of Defendant the Facility can continue to operate in a manner which will not violate this Decree.

If a delay or anticipated delay in performance is attributable to Force Majeure, the time for performance of the obligations under this Decree that are affected by the Force Majeure event shall be extended for the period of time reasonably necessary to allow performance of the obligation to the extent the delay was caused by a Force Majeure event.

**CONSERVATION LAW FOUNDATION, INC.**

By: /s/ Christopher M. Kilian _____ Date: 9/17/18

Christopher M. Kilian, Vice President
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602


**J. MELONE AND SONS, INC.**


By: _____ Date:_____

Peter Melone, Director
J. Melone & Sons, Inc.
77 White Pond Road
Stow, Massachusetts 01775



ENTERED and DATED this ____ day of _____, 2018


_____

Honorable Leo T. Sorokin
United States District Judge

**CONSERVATION LAW FOUNDATION, INC.**

By: _____  Date:_____
Christopher M. Kilian, Vice President
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602

**J. MELONE AND SONS, INC.**

By: *[signature]* Peter F. Melone  Date: 9-25-2018
Peter Melone, Director and Treasurer
J. Melone & Sons, Inc.
77 White Pond Road
Stow, Massachusetts 01775

ENTERED and DATED this 26th day of November, 2018

/s/ Leo T. Sorokin

Honorable Leo T. Sorokin
United States District Judge
District of Massachusetts

